VALIHURA, Justice,
dissenting, with DAVIS, Judge, joining:
While I acknowledge the policy reasons set forth in the majority’s decision, the strict canons of statutory construction compel me to respectfully dissent.
“[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain ... the sole function of the courts is to enforce it according to its terms.”[1] If statutory text is unambiguous, this Court’s role is limited to an application of the literal meaning of the statute’s words.[2]
The majority correctly begins its interpretation of the term “adult conviction” by looking at the language of the statute itself. The juvenile expungement statute provides in relevant part:
(a) The Family Court may grant a petition for expungement if: (3) A child has no more than 2 adjudications of delinquency involving separate and distinct cases where the offenses for which the *827 child was adjudicated delinquent are designated as misdemeanors or violations in Title 4, 7, 11, 16 or 23 ... excepting violent misdemeanors, provided the petitioner has no prior adjudication of delinquency, and 'provided the petitioner has no other subsequent adjudication of delinquency or adult conviction, and provided that the petitioner has no pending criminal charges, and provided that at least 5 years have passed following the date the second adjudication of delinquency was entered in Family Court.[3]
Here, the legislature has provided a definition of “subsequent adjudication of delinquency or adult conviction” under 10 Del. C. § 1016(6):
For purposes of juvenile expungement, unless the context otherwise requires:
[[Image here]]
(6) Subsequent adjudication of delinquency or adult conviction” means an adjudication of delinquency or an adult conviction resulting from the commission of a separate and distinct offense that occurs after a prior adjudication of delinquency.[4]
Title 10, however, does not define what constitutes an “offense.” The definition for “offense” is found in 11 Del. C. § 233 (definition and classification of offenses).[5] Section 233(a) defines “ ‘crime’ or ‘offense’ [as] an act or omission forbidden by a statute of this State and punishable upon conviction by: (1) Imprisonment; or (2) Fine.”[6] Section 233(c) of Title 11 explains that “[a]n offense is either a felony, a misdemeanor or a violation.”[7]
Title 11 also makes clear that violations are a separate category of offenses because in order for an offense to be a violation, it must be “expressly declared to be a violation.” [8] Specifically, 11 Del. C. § 4203 provides: “There shall be a class of offenses denominated violations. No offense is a violation unless expressly declared to be a violation in this Criminal Code or in the statute defining the offense.”[9] A plain reading of this statutory text reflects a legislative intent to treat felonies and misdemeanors differently from violations.[10] However, a plain reading of the term “adult conviction” indicates that it encompasses all “offenses.” This reading of the statutory scheme leads to the harsh result that the majority understandably strains to avoid, namely, that speeding violations under Title 21 are bars to juvenile ex-pungement.
I part from the majority’s company in this case because, while I agree that the result is harsh and also favor a way to avoid it, I cannot do so through my reading of the statutes as they are presently written. Thus, if there is a perceived “harshness” with this result, then that is a problem for the legislature to address.[11]
*828 The majority concludes that only offenses contained within Titles 4, 7, 11, 16, and 23 act as an automatic bar to juvenile expungement under Section 1018(a)(3). They argue that because the five titles are expressly enumerated, these five titles must be the only the titles that are included within the term “adult conviction.” Therefore, they argue, a Title 21 offense, since it is not one of the five enumerated titles, is not a bar to expungement. The flaw in the majority’s statutory analysis is evidenced in at least six ways.
First, to accept the majority’s logic, and to apply it consistently within Section 1018, would be to find that only Title 11 and 16 adult convictions bar expungement when the petitioner is seeking expungement of a single juvenile felony under 10 Del. C. § 1018(a)(1), because that subsection only mentions Titles 11 and 16.[12] The majority is not prepared to say that Section 1018(a)(1) is so limited. Yet, the majority fails to offer any cogent explanation for the lack of consistency in their interpretation of two paragraphs contained in the same section of the statute. The majority’s logic conflicts with the principle of statutory construction upon which the majority relies, namely, the “expression of one thing is the exclusion of another.”[13]
Second, it is not reasonable to conclude that the five titles referenced in Section 1018(a) are the only offenses which should automatically bar juvenile expungement for yet another reason. Section 1018(a)(3) references Titles 4, 7, 11, 16, and 23.[14] However, there are offenses under Titles 3, 6, 9,15, 20, 21, 30, and 31 that constitute felonies and could be deemed “adult convictions” that bar juvenile expungement.[15]
*829 Third, Section 1018(a)(3) itself uses the term “offenses” to include “violations” in providing that “[a] child has no more than 2 adjudications of delinquency involving separate and distinct cases where the offenses for which the child was adjudicated delinquent are designated as misdemeanors or violations....”[16] Thus, the majority’s logic of holding that only offenses under Titles 4, 7, 11, 16, and 23 bar ex-pungement, leads to yet another illogical result. For example, Title 23 makes it a violation to fail to purchase a $35 boat ramp certificate.[17] It would be an absurd result if the failure to purchase a boat ramp certificate bars juvenile expungement when careless driving under Title 21[18] that results in an accident[19] does not. Thus, while the majority relies on the policy statement in Section 1014 regarding the desire to “protect children and citizens from unwarranted damage which may occur as a result of a juvenile arrest record ...,” its interpretation of the statutory scheme does not necessarily further that end.
Fourth, the majority’s reliance on Section 1015(b)’s requirement that petitioners attach “a copy of that petitioner’s criminal history as maintained by the State Bureau of Identification” in support of its conclusion is misplaced.[20] The majority reasons that because the certified criminal history does not include Title 21 traffic violations, such offenses were not intended to be considered as bars to juvenile expungement. The majority is correct in noting that Title 21 traffic violations are listed on the Delaware Criminal Justice Information System (“DELJIS”), and most Title 21 offenses are not included in the certified criminal history.[21] However, this argument fails to acknowledge that the Family Court, when considering the expungement petition, must always rely on the DELJIS record for certain purposes.[22] Only the DELJIS record — not the certified criminal history — indicates whether an individual has a pending criminal charge against him or her. Thus, the Family Court must rely on the DELJIS record to determine if there are pending criminal charges against the petitioner that may bar juvenile expungement.[23] It seems logical, therefore, that *830 the DELJIS record, which is unavailable to the general public, was intended by the legislature to be used by the Family Court to determine a petitioner’s eligibility for juvenile expungement.[24]
Fifth, the majority reaches the conclusion that only violations under the titles enumerated in the language of Section 1018(a)(8) should constitute a bar on ex-pungement, in part, on reading into the terms “other” and “subsequent” a reference to the specified titles mentioned in the subsection. The terms “other” and “subsequent” apply to “adjudication of delinquency” but do not apply to “adult conviction.” This is because an “adult conviction” must necessarily be after-in-time any juvenile offense or adjudication of delinquency. Whereas an adjudication of delinquency may not necessarily be after the offense for which expungement is sought, and therefore, the terms “other” and “subsequent” are a necessary modifier. To apply the terms “other” and “subsequent” to “adult conviction” would create rfedun-dancy and violate the canon against sur-plusage [25] because an offense committed as an “adult” necessarily encompasses the fact that it is subsequent to an offense committed as a “juvenile.” As a result, the use of the word “or” serves as a disjunction between “other subsequent adjudication of delinquency” and “adult conviction.” [26] Accordingly, even if we were to attribute any meaning to the words “other” and “subsequent,” those words modify “adjudication of delinquency,” not “adult conviction.”
Sixth, the juvenile expungement statutes have been amended several times in the recent years.[27] The General Assembly has had ample opportunity to include within the statutory text carve outs and exclusions. For example, it has made explicit exclusions in 11 Del. C. § 4121(e)(2) for motor vehicle offenses:
If the offender has been convicted of any subsequent offense (other than a motor *831 vehicle offense) ... no petition or redesignation [of a reformed sex offender] shall be permitted until 25 years have elapsed from the date of the subsequent conviction....”[28]
Additionally, the General Assembly designated certain Title 21 violations as civil offenses that do not constitute prior convictions for the purpose of granting probation before judgment.[29] These carve outs indicate that the legislature intends for the term “offense” to include Title 21 traffic violations unless there is a motor vehicle offense carve out.[30] Thus, because certain statutes expressly carve out motor vehicle violations from qualifying offenses and Title 10 does not, the legislature must have intended to include Title 21 traffic violations within the scope of offenses that bar juvenile expungement.
The Family Court has struggled with how to address Title 21 in the context of juvenile expungement. For example, in M.S. v. State, the Family Court addressed
a petition for juvenile expungement where the petitioner had seven convictions for speeding and one conviction for failure to change an address.[31] The court interpreted “adult conviction”[32] under its plain meaning and found that Title 21 traffic violations were “adult convictions.” In R.E. v. State, the Family Court addressed a petition for juvenile expungement where the petitioner had two driving under the influence (“DUI”) convictions as an adult.[33] The court considered our decision in Lee v. State where we affirmed the denial of a juvenile expungement petition under the predecessor of our current juvenile ex-pungement statutes[34] because Lee’s offenses, “including motor vehicle offenses, driving under the influence, failure to register as a sex offender and hindering prosecution,” were bars to juvenile expungement.[35] The court balanced our decision against the fact that a certified criminal history from the State Bureau of Identification does not include motor vehicle violations, including first and second offense DUIs.[36] The Family Court ultimately *832 reached the conclusion that a DUI was a Title 21 offense that would bar juvenile expungement because it “is a very serious offense which can cause severe injury and death.”[37] However, in CM. v. State, the Family Court determined that a speeding offense should not be considered an “adult conviction” because otherwise the plain meaning of the juvenile expungement statute leads to an unreasonable result.[38] These cases suggest that the Family Court could benefit from some clearer guidance on what types of offenses constitute bars to juvenile expungement.
Apart from our disagreement with the majority’s statutory analysis, we further depart from the majority’s opinion in its reading of C.M. v. State. The majority relies on this case to illustrate a potential anomaly where an expungement would not be barred for a predicate offense committed [39] as an adult, but would be barred for an offense committed as juvenile, if a Title 21 offense were committed after the offense for which expungement is sought. The majority fails to consider critical language in the adult expungement statute. The Family Court concludes that if “adult convictions” under Section 1018 include Title 21 offenses, the juvenile expungement statutes would be harsher than the adult expungement statute.[40] The Family Court reached this conclusion based on its reading of the adult expungement statute, 10 Del. C. § 1025:
If the Court finds that the continued existence and possible dissemination of information relating to the arrest of the petitioner causes, or may cause, circumstances which constitute a manifest injustice to the petitioner, it shall enter an order requiring the expungement of the police and court records relating to the charge or case. Otherwise, it shall deny the petition. The burden shall be on the petitioner to allege specific facts in support of that petitioner’s allegation of manifest injustice by a preponderance of the evidence. The fact that the petitioner has previously been convicted of a criminal offense, other than that referred to in the petition, shall be considered by the Court as prima facie evidence that the continued existence and possible dissemination of information relating to the arrest in question does not constitute a manifest injustice to the petitioner:[41]
Section 1025 indicates that an adult convicted of a criminal offense prior to the case terminated in his or her favor (for which he or she is seeking expungement) must rebut the prima facie evidence that a denial of an expungement petition will not constitute a manifest injustice.[42] The Family Court concluded that if Section 1025 allows for presenting evidence to the court to determine whether a denial of an expungement petition would constitute a manifest injustice, and Section 1018 does not provide that opportunity, the juvenile expungement statute is more harsh than the adult expungement statute.[43] This con- *833 elusion, which the majority adopts, is based upon a misunderstanding of the time periods referenced in the statutes. The adult expungement statute only allows for evidence to be presented if the offense occurred prior to the case for which the petition is filed — not after.[44] The “adult conviction” term in the juvenile expungement statutes applies only to an offense “subsequent” to the case for which the petition is filed.[45] Thus, because the adult expungement statute and the juvenile expungement statutes reference different time periods, it does not follow that the juvenile expungement statutes are more onerous than the adult expungement statutes.[46]
Finally, as pointed out to this Court during oral argument, the State Senate considered a bill as recently as June 3, 2014, that would have amended the definition of “adult conviction” to include only offenses “punishable by 30 or more days of imprisonment.”[47] It appears that some members of the General Assembly have already recognized that allowing Title 21 traffic violations to bar juvenile expungement can result in what is likely viewed by many as an undesirable result. As the statute is now written, however, I cannot embrace my colleagues’ interpretation of it. Accordingly, I would AFFIRM the decision below.

. Friends of H. Fletcher Brown Mansion v. City of Wilmington, 34 A.3d 1055, 1059 (Del.2011) (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).

. Dennis v. State, 41 A.3d 391, 393 (Del.2012).

. 10 Del. C. § 1018(a)(3) (emphasis added).

. 10 Del. C. % 1016(6) (emphasis added).

. 11 Del. C. § 233(a); see also Black’s Law Dictionary (9th ed. 2009) (defining “offense” as "a violation of the law, a crime, often a minor one.”).

. 11 Del. C. § 233(a).

. Id. at § 233(c).

. See 11 Del. C. § 4203.

. Id.

. This distinction was reflected in the case law, also. See Jester v. Dept. Pub. Safety, 1991 WL 89878 (Del.Super. May 28, 1991) (Steele, J.) (“Delaware has never treated motor vehicle violations as criminal offenses.”); In re Robert Sacks, 1970 WL 115795 (Del.Su-per.Nov. 11, 1970) (“Society does not accept the present definition of crime and criminal record as including minor motor vehicle offenses.”).

. Cf. Lewis v. City of Chicago, Ill., 560 U.S. 205, 215, 130 S.Ct. 2191, 176 L.Ed.2d 967 (2010) (“It is not for us to rewrite the statute so that it covers only what we think is neces *828 sary to achieve what we think [the legislature] really intended.”); U.S. v. Locke, 471 U.S. 84, 95, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) (“Nor is the Judiciary licensed to attempt to soften the clear import of [the legislature’s] chosen words whenever a court believes those words lead to a harsh result.”).

. 10 Del. C. § 1018(a)(1) (“The Family Court may grant a petition for expungement if: (1) A child is charged in a case with the commission of an offense designated as a felony in Title 11 or 16, and the case is terminated in favor of the child, provided the petitioner has no prior adjudication of delinquency, and provided that the petitioner has no subsequent adjudication of delinquency or adult conviction, and provided that the petitioner has no pending criminal charges, and provided that less than 1 year has passed following the date the case was terminated, disposed of, or concluded in Family Court.” (emphasis added)).

. Brown v. State, 36 A.3d 321, 325 (Del. 2012); see also Leatherbury v. Greenspun, 939 A.2d 1284, 1290-92 (Del.2007) (explaining the expressio unius est exclusio alterius canon of statutory interpretation).

. 10 Del. C. § 1018(a)(3).

. See, e.g., 3 Del. C. § 10050 (fraudulent certificate of registration or eligibility documents); 6 Del. C. §§ 4720-4724 (unused property markets); 6 Del. C. § 73-201 (fraud); 6 Del. C. § 2503A (registration of sellers, telemarketers, and telemarketing businesses); 9 Del. C. § 916 (unauthorized acts against a service dog); 15 Del. C. § 5301 (bringing armed soldiers into State to interfere with elections); 20 Del. C. § 3128 (destruction of property, looting or injury of persons during state of emergency); 21 Del. C. § 2316 (altering or forging certificate of title); 21 Del. C. § 2760(b) (duplication, reproduction, manufacture, and sale of identification card); 21 Del. C. § 4103(b) (obedience to authorized persons directing traffic); 21 Del. C. § 4134(d) (operation of vehicles on approach of authorized emergency vehicles); 21 Del. C. § 4177(d)(3)(7) (third or greater offense driving under the influence or with prohibited alcohol or drug content); 21 Del. C. § 4202(b)-(c) (duty of driver involved in collision resulting in death); 21 Del. C. § 4604(a) (possession of motor vehicle master keys); 21 Del. C. § 6704 (receiving or transferring stolen vehicle); 21 Del. C. § 6705(b), (d) (removed, falsified or unauthorized identification number on vehicle with intent to conceal or misrepresent); 21 Del. C. § 6708 (possession of blank title); 21 Del. C. § 6709 (removal of warranty or certification stickers); 21 Del. C. § 6710 (unlawful possession of assigned titles); 30 Del. C. § 574 (fraud and *829 false statements); 30 Del. C. §§ 5131-5140 (special fuel tax); 31 Del. C. § 3913 (adult protective services).

. 10 Del. C. § 1018(a)(3).

. 23 Del. C. § 2113(e) ("Any vessel utilizing tidal water boat access facilities provided by the Department shall be registered as required in this section in the State (which license includes funds for maintenance of these facilities under § 2118(b) of this title) or shall purchase a ‘boat ramp certificate.' ”); 23 Del. C. § 2125(b) (“Whoever violates § 2113(e) of this title shall be guilty of a Class D environmental violation.”).

. 21 Del. C. § 4176.

. See, e.g., Shockley v. Whitehead, 2014 WL 1254113 (Del.Super.Mar. 26, 2014); Christiansen v. Gustafson, 2013 WL 6913241 (Del.Super.Dec. 24, 2013).

. 10 Del. C. § 1015(b).

. Felony convictions under Title 21 are included in the certified criminal history.

. See 10 Del. C. § 1015(c) ("The Family Court must consider the entire juvenile arrest record in granting or denying the petition, consistent with sections §§ 1017 and 1018 of this title.”). While it is true that petitioners have an obligation to disclose whether they have any pending delinquency or criminal charges on the petition, Section 1015(c) expressly requires that the Family Court consider petitioners’ record when determining eligibly of expungement. See id.; Petition for Expungement of Juvenile Record Form 282M, 282D, available at http://courts.delaware.gov/ forms/download.aspx?id= 60948.

. See 10 Del. C. § 1018(a)(3) (noting that expungement may be granted if, among other provisions, "the petitioner has no pending criminal charges”).

. Appellant, through 'the Amicus Curiae, also argues that if the Family Court is to rely on the DELJIS record, there is no need for a petitioner to pay for the certified criminal history. This is because the DELJIS record contains all the information in the certified criminal history. However, it is possible that the legislature intended for the Family Court to have two forms of a petitioner’s criminal history. The DELJIS record is not certified and may contain inaccuracies. See, e.g., M.S. v. State, 2012 WL 6765557, *1 (Del.Fam. Dec. 21, 2012) (noting that petitioner’s DELJIS record was "incorrect” regarding the disposition of an earlier Underage Consumption charge). The certified criminal history, on the other hand, is authenticated and verified by the State Bureau of Identification.

. See Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem’l Hosp., Inc., 36 A.3d 336, 344 (Del.2012) (“We affirm the canon of statutory construction that every word chosen by the legislature (and often bargained for by interested constituent groups) must have meaning.”).

. In my view the disjunction would read as: "... provided the petitioner has no other subsequent adjudication of delinquency ...” and "... provided the petitioner has no ... adult conviction....” The majority’s opinion contorts the reading of the statute. The majority would have us read the disjunction as: "... provided the petitioner has no other subsequent adjudication of delinquency ...” and "... provided the petitioner has no other subsequent ... adult conviction....” Such a reading makes little to no sense in the context of a juvenile expungement. In the context of juvenile offenses that may be expunged, it seems odd that an individual seeking to expunge a juvenile offense would have an “other" adult conviction when it is likely that the individual had no initial adult conviction. Further, the phrase before — "provided the petitioner has no prior adjudication of delinquency” — also supports the view that the statute intends to contrast "prior” and “other subsequent” adjudications of delinquency. See 10 Del. C. § 1018(a)(3).

. 146 Del. Laws 188 (2011); 146 Del. Laws 252 (2012); 146 Del. Laws 343 (2012).

. 11 Del. C. § 4121(e)(2) (emphasis added).

. See e.g., 21 Del. C. § 4178 (“Any violation of this subchapter or any municipal or county ordinance, code or regulation prohibiting stopping, standing or parking shall be subject to a civil penalty only. Such violation shall not be classified as a criminal offense and shall not qualify as a prior conviction for purposes of § 4218(c)(l)f. of Title 11.” (emphasis added)); 21 Del. C. § 801 (“The provisions of this chapter shall apply to civil penalties created pursuant to §§ 4101(d) and 4802 of this title and to other civil penalties provided for in this title.”).

. See Office of Chief Med. Exam’r v. Dover Behavioral Health Sys., 976 A.2d 160 (Del.2009) (indicating that the legislature knows how to create carve outs, and when the legislature does not, it intended not to).

. M.S., 2012 WL 6765557.

. Id.

. RE. v. State, Del.Fam., C.A. No. JN97-2157 (Feb. 22, 2012).

. 10 Del. C. § 1001(a) ("In any case wherein an adjudication has been entered upon the status of a child under 18 years of age and 3 years have elapsed since the date thereof and no subsequent adjudication has been entered against such child, the child or the parent or guardian may present a duly verified petition to the Court setting forth all the facts in the matter and praying for the relief provided for in this sectionf[.]”), repealed by 78 Del. Laws 2001, ch. 188, § 1 (2012). The former juvenile expungement statute only includes the term "subsequent adjudication” and does not include the term "adult conviction.” See id. However, this Court interpreted the term "subsequent adjudication” to include convictions as well. See Lee v. State, 2009 WL 2894315 (Del. Sept. 10, 2009).

. Lee, 2009 WL 2894315, at *1 (interpreting 10 Del. C. § 1001(a), repealed by 78 Del. Laws 2001, ch. 188, § 1 (2012)).

. R.E., Del.Fam., C.A. No. JN97-2157.

. Id. at *2.

. C.M. v. State, 2013 WL 6174800 (Del.Fam. May 14, 2013).

. It should be noted that the adult expungement statute allows for the offense to be expunged if, among other conditions, the case is terminated in favor of the accused. See 10 Del. C § 1025. Thus, if the offense was actually committed by the adult and judgment against the adult was entered, the adult petitioner would not be eligible to have his or her criminal record expunged.

. C.M., 2013 WL 6174800, at *2-3.

. Id. at *2 (emphasis added) (quoting 10 Del. C. § 1025(e)(2)).

. 10 Del. C. § 1025(e)(2).

. C.M., 2013 WL 6174800, at *2-3.

. The logic seems to be that a petitioner with a record of criminal conduct prior to the case for which he or she seeks expungement has a higher standard for manifest injustice than a petitioner with no record of prior criminal conduct.

. 11 Del C. § 1018(a)(3) (emphasis added); see also id. at § 1017(a)(3).

. In fact, a different provision of the adult expungement statute only allows expungement "if the person has not been convicted for any crime since the date [of] the case [for which petitioner seeks expungement]." 10 Del. C. § 1025(d).

. SB. 233, 147th Gen. Assemb., 2d Reg. Sess. (Del.2013).